Gideon C. McClune, Appellant, v. Josiah H. Cain and others, Respondents.

Whether one in business claiming and holding himself out to be acting as "agent" for another, *is in fact* acting as agent or on his own account, is properly a question for the jury.

In a case where the issue was one of fact as to whether a person was transacting business as "agent" for another, or on his own account, the jury found in effect that he was acting as agent. The Supreme Court at General Term, reversed the judgment on the ground that the verdict was against evidence.

*Held*, that the judgment of reversal was erroneous, there being very considerable evidence to support the claim that the party was acting solely as agent and not on his own account.

This is an action for the recovery of personal property; was tried at Tompkins Circuit in January, 1859. The jury rendered a verdict for the plaintiff for $609 damages. A case and exceptions were made. A motion for a new trial was made thereon at Special Term. The motion was denied. An appeal was taken to the General Term therefrom. A majority of the General Term reversed the judgment and ordered a new trial. An appeal was taken from thence to this court, with a stipulation that if judgment be affirmed it be absolute.

The property in question consisted of peas, butter, eggs and apples. The defendants Cain and Ward are judgment creditors of William G. McClune, the other defendants are their bail. The judgment of the defendants against William G. McClune was in the Supreme Court. An execution was issued thereon and levied upon the property in the city of New York, to which place it had been transported, by railroad from Ithaca, for sale. It was levied upon as the property of the said William G. McClune, who was the father of the plaintiff. It was forwarded to New York by William G. McClune in February or March, 1858, in his name as agent; and by a stipulation of the counsel at the trial, the only issues to be tried were, whether the property belonged to the said William G. McClune, or to the plaintiff,

·and if to the latter, then what damages he had sustained. The leading facts, as they appeared on the trial, were, that the said William G. McClune, the father, occupied a grocery store at the corner of Aurora street, Ithaca. His sign was, "William G. McClune, agent." The store was rented of George Whiton, who knew for whom he claimed to be agent. Receipts for rent were given to William as agent. The articles in question were purchased by William in his name as agent. The vendors were informed that William G. McClune was the agent of his son, the plaintiff, and credit was given by the vendors to the plaintiff on the sales. Notes were given for money borrowed to conduct the business and signed by William as agent. To one note given at the bank for that purpose, the bank required the plaintiff's name in addition, and it was given. Sometimes the plaintiff himself borrowed money for the business. When William borrowed money or purchased articles on credit he gave notes in his name as agent. This was the evidence of William, of the plaintiff, and of some eight or nine other witnesses who had sold articles to William, all concurring as to the name in which articles were purchased, and with the evidence of knowledge that William always claimed and professed to be the agent of the plaintiff. There was no direct evidence that the business was conducted otherwise, or that William claimed or held himself out to be the absolute owner.

The evidence, on cross-examination, and on the part of the defendants, tended to show that William G. McClune was insolvent; that he had formerly conducted business in his own name; that he was burnt out in 1854; was insured for $1,000, which money he got, and paid it out upon debts; that he then worked, at a salary, for a year and a half. Then the two sons of William, James and the plaintiff, Gideon, borrowed $400, and put William, the father, into the store in question, when he commenced doing business as agent for James, and so continued until the death of his son James, in November, 1856. James had no property, but the plaintiff had some and had credit. The notes upon which

James and the plaintiff borrowed the money to establish their father in business were signed by both. Before James' death he verbally transferred the business to the plaintiff, requesting him to take charge of it, and the plaintiff assented. James made no will, and was a single man. An invoice was then made. Gideon, the plaintiff, took possession after James' death, found it insolvent to a small extent, paid the debts, and told his father, William, to go in and do business, and be careful not to involve him further than necessary to carry it on, and pay James' debts and funeral expenses. There was nothing left over, after paying James' debts. $100 of the original $400 borrowed by James and plaintiff together, with $100 borrowed of Randolph, also $100 borrowed of the bank by plaintiff, remains unpaid. The packages levied upon in this case were marked " W. G. McC., agt."

The judgment of the defendants, Cain and Ward, was obtained in 1853, before William G. McClune was burnt out. William G. McClune lived out of the proceeds of the business, and kept no account of what he spent on his own living. The notes to Randolph, Burritt and Coon were paid out of the concern. There was no other evidence on the question of title upon either side.

The plaintiff here rested, and the defendants moved for a nonsuit on these grounds, among others:

1. That the facts proved and undisputed show no title to the property in question in the plaintiff.

2. That the property in question was bought for Wm. G. McClune as a part of his stock in trade, and it is indifferent whether it was bought on the credit of the plaintiff or plaintiff was security for the debt.

3. That the whole case shows a loaning by plaintiff to Wm. G. McClune of plaintiff's credit. That Wm. G. McClune did busiuess thereon for his own sole benefit and advantage, and that plaintiff had no other interest therein than every indorser has in a person doing business on credit, and that it is not, therefore, any ageney on the part of Wm. G. McClune, but an actual ownership of all property brought in the business.

4. That the case was one of actual fraud, and that the relation between plaintiff and Wm. G. McClune was a fraud upon the creditors of the latter.

The said justice decided:

1. That it was a question of fact for the jury whether the title was in the plaintiff.

2. That it was also a question for the jury whether the property was bought for Wm. G. McClune.

3. That it was also a question for the jury whether it was a loan of the plaintiff's credit, or a case of agency.

To each and every of said rulings the counsel for the defendants excepted. The said justice thereupon denied a nonsuit, to which defendants excepted.

The defendants then offered evidence upon the question of value of the property, and there was also some evidence of the plaintiff on the subject of value.

When the testimony closed, the defendants' counsel requested the judge to charge the jury that the facts proved and undisputed did not show any title to the property in suit in the plaintiff. The judge declined so to charge, and the defendants' counsel excepted.

The judge charged that the title to the property was a question of fact for the jury, to which the defendants' counsel excepted.

The defendants' counsel further requested the judge to charge, that the whole case showed a loaning by plaintiff to William G. McClune of the plaintiff's credit; that William G. McClune was doing business for his own sole benefit and advantage, and that the plaintiff had no other interest therein than an indorser had in a person doing business on his credit; that it was not, therefore, a case of agency on the part of William G. McClune, but an actual ownership of all the property bought in the business.

The judge declined so to charge, to which defendants' counsel excepted.

But, in the same proposition, the judge charged that it was a mixed question of fact and law, that it was a ques-

tion of fact whether it was a mere loan of credit or a case of agency; to which defendants' counsel excepted.

The defendants' counsel requested the judge further to charge, that the case was one of actual fraud, and that the relation between the plaintiff and William G. McClune was a fraud upon the creditors of the said William G.

The judge declined so to charge, to which the defendants' counsel excepted; but charged the jury that it was a question of fact, whether the property was really in good faith the property of plaintiff, and William G. McClune acted as agent, or whether it was a fraudulent arrangement to keep the property of William G. McClune from his creditors.

The judge charged the jury, that the owner was entitled to the fair market value of his property in the city of New York, of which the sheriff's sale was some evidence.

The defendants' counsel also excepted, that the judge left any question of fact to the jury, except that of damages.

The jury rendered a verdict in favor of the plaintiff, against the defendants, for $609 damages, and the defendants had leave to make a case and exceptions.

*Dana & Beers*, for the plaintiff.

*B. G. Ferris*, for the defendants.

Potter, J.　There was by stipulation of the parties, but one issue really to be tried in this action, viz.: Was the property in question, at the time it was levied upon by the defendants, the property of William G. McClune, or was it the property of the plaintiff? If this was a question of fact, it was settled by the jury, and it would be our duty only to hold the judgment entered upon the verdict to be correct, unless it was clearly against evidence.

The General Term reversed the judgment on the ground as stated in the opinion, that the verdict was against evidence. In this respect it seems to me the General Term was clearly in error. There was no conflict of testimony in the case. Two witnesses distinctly swore it was the plaintiff's property There was no fact sworn to that was contradicted. All the

oral evidence in the case is, that the property was the plaintiff's. The jury could have given no other verdict than they did, but upon inferences arising from the manner of transacting the business, which amount to an impeachment of the oral evidence. If these circumstances, and the inferences to be drawn from them, were in conflict with, or contradictory of the oral evidence, the question was still a question for the jury. If the manner in which the plaintiff loaned his money and the conduct of the business by William G. McClune was evidence of fraud against the creditors of the latter, still it was only evidence, and the question still was one for the jury. Unless such conduct of business by one upon capital advanced by another, is a fraud in law, fraud *per se*, then it is only evidence of fraud to be weighed by a jury. It is not fraud *per se*, for one person to employ another who is insolvent, and indebted largely to others, to act as his agent in the transaction of business, he only runs the risk of creating circumstantial evidence which may affect his title to the property thus controlled by the agent. It is not fraud, *per se*, for a son to advance money or credit in aid, or entirely to support his father—he is under a moral as well as a legal obligation to do so. There is no rule of law directing or limiting the manner in which he shall afford the voluntary support in such case. If he gives his father no false credit before the world by his manner of advances, he commits no fraud. The defendants are not persons who have dealt with the plaintiff's agent, and that claim to have been deceived, or induced to the giving him a false credit. Assuming that the method and object of this business was solely for the support of the father of the plaintiff, and that the plaintiff loaned not only his money but his credit for this purpose, it might still be, it is possible to be, not only an honest but a praiseworthy act; it was not necessarily, and as a matter of law, fraudulent. Whether therefore it was the one or the other, depended upon the evidence in the case, and the learned judge at the trial rightly submitted this question upon the evidence to the jury. If there was evidence to go to the jury, as it seems to me clearly there was, it is an unusual exercise of the power of

review to set their finding aside as against evidence. It will be seen the court did not reverse the judgment on the ground that the evidence was insufficient to go to the jury; or that the judge should have nonsuited the plaintiff; or even that the judge erred in his charge, or in his refusal to charge; but, "that the verdict is clearly against evidence." With great respect, I think the verdict was strongly sustained by evidence—certainly there is evidence enough to support it. That the court below were satisfied with the dispensation of the law by the judge on the trial, is clear, by putting their reversal not upon any error committed by the judge, but alone on the ground of its being against evidence.

They say "the evidence in the case shows that it was a mere loan of credit by the plaintiff to his father, William G. McClune." This question was put to the jury by the learned judge at the trial, as a question of fact, and the jury answered it by their verdict: "That it was a question of *fact* whether it was a mere loan of credit, or a case of agency." The Supreme Court themselves say, it was a question of *evidence*. The jury passed upon it as a question of evidence; and that the court differed with the jury in their finding in this particular, is not a sufficient reason for reversing the judgment. The cases are too numerous and uniform upon this point to require them to be cited. It cannot be assumed, as a matter of law, that a son may not support his father by indirection, in aiding him with loans of money and credit, to enable the father thus to conduct business and to thus contribute to his own support. Much less may it be assumed that a son may not support his father by giving him the use or profits of business in the way of an agency, the son continuing to hold the title as principal. And, whether the act be one of genuine filial duty and kindness on the part of the son thus to aid a parent, or a fraudulent scheme to cheat creditors, is, above most others, a question of fact exclusively the province of a jury to determine. If it was the former, there was an advantage to the son in supporting the father in this manner, and he would not be a mere volunteer loaning his credit to another, without advantage to himself. The case of *Taylor*

v. *Perkins* (26 Wend., 124) is not controlling, as authority, in this case; it is unlike it in most important particulars. That was a case where one individual made and assumed advances to aid another in carrying on business, without any benefit or advantage to him who made the advances, and where the person receiving the advance, claimed and held himself out to be the owner of the property. True, there was a verbal agreement between the parties that the party thus advancing means should have the control and disposition of the property acquired by the means furnished, but the party advancing the means, and allowing the business to be conducted in the name of the borrower, gave him a false credit, and the creditors so trusting him were held to have the superior right. The distinction is plain.

I am clearly of opinion that the court below were in error in reversing the judgment, and that their judgment should be reversed.

Wright, J. I think the proper disposition was made of the case at the circuit. It was admitted that the property had been taken and sold by direction of the defendants. To entitle the plaintiff to recover, it was only required of him to show that he was the owner of it when converted. This he did, or at least the testimony adduced by him on the question of ownership was such, that it would have been error in the judge to have granted a nonsuit, or, what was the same thing in effect, to have complied with the request to instruct the jury, as matter of law, that such testimony showed that he had no title to the property. The facts that the testimony tended to establish, when the case was rested, were these, in substance: In 1856, William G. McClune, the father of the plaintiff, being in indigent circumstances, James McClune (his son) started him in the business of a grocer. The purpose was to give him employment and enable him to support himself and family. The capital for starting the business ($400) was borrowed on the notes of James and the plaintiff. The father managed the business, as James' agent, until the death of the latter in November, 1856. At that time, the concern

was insolvent to a small amount. · The plaintiff then took it by James' request, and paid James' debts, contracted first, and thereafter the father acted, or professed to act, as plaintiff's agent. The sign on the grocery was "William G. McClune, agent," and the business was principally conducted by William, though the plaintiff attended the grocery when he could. The purchases were made on the plaintiff's credit and with his money and means; and the vendors were uniformly informed, so far as the case discloses, that the purchases were made for him, and that he was the person responsible for the payment. The father had no means of his own, and there was no proof or pretense that he ever put any thing in the concern. He received, it is true, by assent of the plaintiff, all the profits arising from the business, and goods purchased from the store by the plaintiff himself were generally paid for by the latter. The property converted by the defendants was bought by the father, as he distinctly testified, not on his own account, but as plaintiff's agent, and for him, and shipped to New York in March, 1858. It consisted of twenty-eight barrels of apples, two firkins of butter, six barrels of peas and thirty-four barrels of eggs. The apples were bought of one Giles. He told Giles, when the purchase was made, that he was doing business for the plaintiff. Both Giles and William testified that they were purchased for and on account of the plaintiff, and the plaintiff himself swore that he had paid Giles a part of the purchase-money. The butter he purchased from one Rightmire. He informed him that he bought it for plaintiff, as his agent, and Rightmire testified that he sold it to him for and on the credit of the plaintiff, and would not have sold it to William himself. The eggs and peas were bought from various persons, and were paid for from the proceeds of notes discounted by the Tompkins County Bank and the Merchants' & Farmers' Bank. The notes were signed "William G. McClune, agent." They were presented by William in that form for discount, he explaining that he was the agent of the plaintiff. As a precautionary measure, the banks required him to get the plaintiff's name to the paper, which he did. The plaintiff paid the notes at maturity. ·

Whilst the business of the grocery was being carried on, sometimes the plaintiff, but more frequently the father, would borrow money for its purposes, the father signing the notes as agent; and paying such notes as were paid when the store was in operation, from the receipts of the business. The latter lived out of the proceeds of the business, and kept no account of what he spent on his own living; nor up to the time of the trial had there been any accounting with the plaintiff as to profits. After the property in question in this suit had been seized and sold by the defendants, the father had for a short time most of the management of the store, but soon thereafter the goods left therein were sold, and the store closed by the plaintiff's direction. The plaintiff received fifty dollars of the avails of the sale, and applied it toward the payment of the notes at the banks, and the remainder of such avails were applied on other debts.

In view of these facts there is no force in the suggestion that the judge should have nonsuited the plaintiff. On the contrary, I think, it would have been clear error to have determined, as matter of law, that he had shown no title to the property in controversy, which the judge must necessarily have done had he granted the motion. Stress might be laid on the circumstance that the purchase and shipment of the particular property to the New York market, was a mere speculatory adventure—an isolated transaction; and the goods no part of the stock in trade of the grocery, which the defendants insist was established and conducted solely for the benefit of the plaintiff's father. That business did not consist in buying produce to resell in the New York market. But treating the transaction as being in some way parcel of the grocery business, the question recurs, was the plaintiff or William G. McClune, the purchaser of the property converted? On this question the proof tended but one way. William G. McClune himself was the principal witness, and he testified distinctly that he bought the property for and on account of the plaintiff, the vendors corroborated him in his statements, and the plaintiff likewise, for he ratified his agency in the matter by subsequently paying the

purchase-money in whole or in part. The claim made on the trial, and re-asserted here, that the goods were not bought by the plaintiff, but by William G. McClune, the father, with money borrowed on the plaintiff's credit, rests not, as is asserted, "on admitted" facts. William G. McClune, it is true, was the actor in making the purchases, but whether he made them as plaintiff's agent and for him, or for himself, was the point in dispute. To have held that he acted for himself, and not for the plaintiff, in this particular transaction; that no case of agency was shown, but that McClune himself, was the purchaser, and the plaintiff occupied the relation only of *his* creditor, would have been clearly against the whole drift of the evidence.

Again, if it were conceded that the property, the title to which is involved in this case, was bought as part of the stock in trade of the grocery, it would not follow as a legal consequence that William G. McClune, and not the plaintiff, was the owner of it. I apprehend it was competent for the plaintiff to have established the grocery, provided the means, and made his father his agent for carrying it on, and given the latter the entire proceeds. Such an arrangement would not make the father the owner of the property brought into the business, nor would the plaintiff be exonerated from liabilities incurred by his agent within the scope of the business. This is claimed, on one side, to have been the real nature of the transaction. On the other, it is insisted that the case showed William G. McClune to have been the principal in the business, the plaintiff merely loaning to him his credit, and that the only relation existing between them was that of debtor and creditor. I think the evidence preponderated in favor of the former instead of the latter view of the case; but it is quite enough that there was any question on the subject.

The order granting a new trial should be reversed, and the judgment of the Special Term affirmed.

All concur except Denio, Ch. J., and Davies, J., who dissent.